# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

DAVID LEGER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

NO. C09-466-JCC-JPD

REPORT AND RECOMMENDATION

Plaintiff David Leger appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

At the time of his administrative hearing, plaintiff was a 48 year-old-man with ten years of high school and two years of college education. Administrative Record ("AR") at 670. His

REPORT AND RECOMMENDATION - 1

past work experience includes employment as a fishing vessel deckhand, welder/fitter, and boat mechanic. AR at 23. Plaintiff was last gainfully employed in 2001. AR at 672.

On December 7, 2005, plaintiff filed a claim for SSI and disability payments. AR at 13. He alleged an onset date of June 1, 2001. *Id.* Plaintiff asserts that he is disabled due to seizures, epidural abcess, depression, panic/schizoid disorder, degenerative disc disease, pneumonia, arthritis, and memory loss. AR at 118, 133.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 13. Plaintiff requested a hearing which took place on April 17, 2008. AR at 666-99. On August 26, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-25. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 6-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Leger bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On August 26, 2008, the ALJ issued a decision finding the following:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2004.

2. The claimant has not engaged in substantial gainful activity since June 1, 2001, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease of the back, major depressive disorder, and personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally lift and/or carry 20 pounds, and can frequently lift and/or carry 10 pounds. The claimant can stand and/or walk (with normal breaks) and can sit (with normal breaks) about six hours in an eight hour work day. The claimant can push and/or pull unlimitedly. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds and can never balance. The claimant does not have any manipulative, visual or communicative limitations. The claimant must avoid concentrated exposure to extreme cold, vibration and hazards (machinery, heights, etc.).

   The claimant has the mental capability to adequately perform the mental activities generally required by competitive, remunerative, unskilled work as follows: understand, remember and carry out simple instructions compatible with unskilled work. The claimant would have average ability to perform sustained work activities ( i.e. can maintain attention and concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. eight hours a day, for five days a week, or an equivalent work schedule)

within customary tolerances of employers rules regarding sick leave and absence.

The claimant can make judgments commensurate with the functions of unskilled work, i.e. simple work-related decisions; the claimant can respond appropriately to supervision, co-workers and work situations; and the claimant can deal with changes all within a routine work setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on ▬▬, 1959[2] and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2001 through the date of this decision.

AR at 15-24.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in his evaluations of the medical evidence?

2. Did the ALJ err by finding plaintiff had only mild limitations in social functioning?

3. Did the ALJ err by failing to find limitations in depth perception and field of vision when the plaintiff is blind in one eye?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

Dkt. No. 13 at 1-2.

## VII. DISCUSSION

### A. The ALJ Erred in His Evaluation of the Medical Evidence Regarding Plaintiff's Physical Limitations

*1. Standards for Review of Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Plaintiff claims that the ALJ erred by rejecting the opinions of Shannan Kirchner, M.D., Nancy Babbitt, M.D., and Gary Gaffield, D.O.

### 2. *Shannan Kirchner, M.D.*

Dr. Kirchner was plaintiff's primary treating physician. On three occasions, she completed physical assessment forms providing detailed impairment by impairment functional limitations faced by plaintiff, and opining overall that plaintiff had sedentary to severely limited functional capacities. AR at 430-32, 74 (October 2004), 409-12 (May 2005), and 387-90 (September 2005).

Notwithstanding Dr. Kirchner's assessments, the ALJ determined that plaintiff could perform a full range of light work. AR at 19. The ALJ did so, however, without even referencing Dr. Kirchner's opinions. The Commissioner argues that the ALJ's general discussion of the treatment that plaintiff received at Anacortes Family Medicine complied with his obligations to evaluate the medical evidence using the appropriate hierarchy. Dkt. No. 18 at 10-11. The opinion in this regard states only the following:

> The claimant consistently reported to his physicians at Anacortes Family Medicine with no complaints and in no acute distress, and both his physical and mental symptoms were well controlled with chronic pain medications, muscle relaxants, antidepressants, and anti-anxiety medications. Exhibits 21F, 29F. Additionally, with regard to the claimant's physical impairments, neurological examinations between July 15, 2005 and July 27, 2005, on April 11, 2006 and on August 6, 2007 were essentially normal. Exhibits 15F, 27F/2.

AR at 20.

There are two problems with the ALJ's conclusion. First, the generality is not supported by the record. The record is replete with references to chronic back pain. *See e.g.,* AR at 425, 427, 422-23, 419, 421, 406, 332-33. Second, this simplistic analysis cannot be squared with the weight that *Orn* requires be given to opinions of treating physicians. No mention is made of the assessments made by Dr. Kirchner and this failure requires remand. The Commissioner argues that the ALJ need not recite certain "magic words" as long as the court can draw specific and legitimate inferences from the ALJ's findings. However, the only specific and legitimate inferences that the court can draw from the ALJ's treatment of Dr. Kirchner's three assessments is that the ALJ simply ignored them or forgot them.

### 3. Nancy Babbitt, M.D.

Dr. Babbitt was also plaintiff's treating physician who began care for plaintiff after Dr. Kirchner. She saw plaintiff first on January 31, 2006. AR at 375. She also filled out a DSHS physical evaluation form in August, 2006. AR at 362-65. She also opined that plaintiff's overall work level was "severely limited." AR at 364. In addition, she identified a number of physical functional limitations. *Id.*

The ALJ rejected Dr. Babbitt's assessments, stating:

> A Physical Examination completed by Nancy Babbitt, M.D., on August 1, 2006 assessed chronic back pain which severely limited the claimant's ability to perform one or more basic work-related activities, meaning that the claimant was unable to lift at least two pounds or unable to stand and/or walk. Exhibit 21F. Yet, as explained above and elsewhere in this decision, objective medical findings do not support the extent of limitations alleged by the claimant. In light of the conflicting findings, it would appear that Dr. Babbitt relied quite heavily on the subjective report of symptoms and limitations provided by the

claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. For these reasons, I give little weight to the opinion of Dr. Babbitt.

AR at 21.

As noted above, the ALJ's casual dismissal of plaintiff's medical history as indicating "no complaints and in no acute distress" cannot be squared with the record. Thus, the ALJ's reference to "objective medical findings" cannot serve as a specific and legitimate basis upon which to base a complete rejection of a treating physician's opinion. By this casual dismissal, the ALJ also overlooked specific references made by Dr. Babbitt. *See e.g.,* AR at 372, 369, 368, 363. In addition, there is no basis upon which to conclude – as did the ALJ – that the plaintiff's treating physician simply relied on the plaintiff's subjective reports and "uncritically" accepted the reports as true. The ALJ erred in his rejection of Dr. Babbitt's opinions.

### 4. *Gary Gaffield, D.O.*

In 2006, at the request of the SSA, plaintiff was examined by Dr. Gaffield. AR at 290-95. Dr. Gaffield concluded that "in view of his significant low back problems, weakness and pain, I would not expect this claimant to be able to walk or stand at all during an eight hour workday." AR at 295. He further limited plaintiff to carrying no more than ten pounds and other physical restrictions. *Id.*

The ALJ agreed with Dr. Gaffield's opinion that plaintiff could sit up to six hours, carry ten pounds frequently and occasional bend, stoop, crouch and climb ladders were supported by the medical evidence. However, he rejected the remaining limitations on standing or walking and an inability to lift more than ten pounds, and manipulative limitations as being "inconsistent with other opinions in the record and are not supported by other neurological examinations discussed above or other medical evidence in the record which shows that claimant can function relatively well with medication. Exhibits 15F, 21F, 27F/2, 29F."

REPORT AND RECOMMENDATION - 10

Exhibits 21F and 29F are records from the Anacortes Family Medicine Clinic. As noted above, the ALJ failed to evaluate these medical records properly. Accordingly, they cannot constitute specific and legitimate bases upon which to discount Dr. Gaffield's opinion.

B. The ALJ Did Not Err in His Evaluation of Plaintiff's Mental Limitations

The ALJ's RFC assessment did not include any limitations on dealing with co-workers, supervisors or the public. AR at 19. Plaintiff argues that the ALJ erred in this regard, based on concerns expressed by Carl Epp, Ph.D. and Harvey Biala, M.D., Dkt. No. 13 at 16-17. Dr. Epp, whose evaluation the ALJ accredited with great weight opined in part:

> It is very obvious that this gentleman has not been employed in occupations where he needed to get along with a wide variety of people. This is not to say he is not intelligent because he clearly is normally intelligent. Therefore, characterological issues become more important with respect to understanding his current situation. . . .
>
> There is a distinct clinical impression that David Leger is a gentleman who still has antisocial attitudes and tendencies, his self-report not withstanding.

AR at 208-09. Dr. Biala opined that Mr. Leger was "socially available for superficial contacts." AR at 187. The ALJ gave great weight to both doctors, although he also concluded that the plaintiff was not limited in dealing with co-workers, supervisors or the public.

It is possible to interpret the mental evidence as urged by the plaintiff. However, the role of this court is limited. As noted above, if the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 at 954. Because the Court cannot conclude that the plaintiff's interpretation of the medical evidence regarding mental limitations is the only rational interpretation, the Court must defer to the ALJ's finding on this issue.

C. On Remand, the Hypothetical to the Vocational Expert ("VE") Should Include All Impairments, Including Plaintiff's Blindness

The plaintiff is legally blind in his left eye. AR at 16. The ALJ found that plaintiff had been able to compensate for this with respect to some of his previous employment, and hence

REPORT AND RECOMMENDATION - 11

the blindness in his left eye was not a severe impairment.

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p.

At the hearing, the ALJ called a VE to testify. The ALJ did not include non-severe impairments, such as plaintiff's blindness in his left eye, in the hypothetical to the VE, and the VE identified jobs such as a small products assembler. According to the Dictionary of Occupational Titles, this job requires depth perception frequently, which the plaintiff lacks. DOT 706.684-022. On remand, the ALJ should ask a hypothetical to the VE that takes into account impairments of the plaintiff's depth perception caused by his left eye blindness.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of January, 2010.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge